In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2238

BANCO DEL ATLANTICO, S.A. and HSBC MEXICO, S.A.,

*Plaintiffs-Appellants,*

*v.*

WOODS INDUSTRIES INCORPORATED,
WILLOW PROPERTIES, INC., NAHUM SHAR, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 1342—**Larry J. McKinney,** *Judge.*

_____

ARGUED FEBRUARY 13, 2008 — DECIDED MARCH 7, 2008

_____

Before CUDAHY, POSNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* This case is a dozen years old, which would ordinarily mean that the issue raised on appeal should certainly not be about discovery. But this is not your ordinary case. Its history is extraordinary—extraordinarily troublesome. The case was pending in a federal district court in Texas for over seven years and has been pending in a federal district court in Indiana for five. But after all this time, the only issue before us is whether the district judge abused his discretion in dismissing the plaintiffs' case because they violated, in several respects, an order

entered pursuant to Federal Rule of Civil Procedure 30(b)(6). The violations involved the plaintiffs' failure to produce deponents prepared to address the topics in defendant's notice of deposition, their failure to produce or account for important documents, and their instructing witnesses to be unavailable for deposition.

In a bulky (285-paragraph, 108-page!) second amended complaint, the plaintiffs charged the defendants with "a prolonged, elaborate and sophisticated" fraud scheme in violation of the federal racketeering statute (RICO), plus a bevy of other claims. The allegations are that the defendants Alfred Stauder and David Felts owned an Indiana company called Woods Wire Products Inc. (Woods I). The company manufactured and distributed electrical products. In 1986, Mario Cruz-Prieto Perez, Stauder, and others formed a Mexican company they called Industrias Corelmex, S.A. de C.V. to be a supplier for Woods I. In 1987, Banco del Atlantico loaned $300,000 to Corelmex before it was operational. The loan was secured by a mortgage on Corelmex's industrial plant. In August 1991, Atlantico entered into a $7 million loan agreement which consolidated and restructured previously issued lines of credit. At least one other loan followed. The various loans were secured by the Corelmex plant and equipment, a mortgage on other real estate, and "guarantees" from Woods I.

The plaintiffs allege that the loans were induced by a number of false statements relating to the value of the collateral, Corelmex's financial condition, and Woods I's intention to recognize its commitments under the guarantees. For instance, Stauder and Felts sold Corelmex to Cruz. The sale was not disclosed, and the allegation is that it is unlikely Atlantico would have approved the financing had it known of the sale. Also, in March 1993, virtually all of Woods I's assets and liabilities were purchased by Pentland USA. However, excluded from the transfer was Woods I's

guarantee of Atlantico's loans to Corelmex. Woods I's business was continued by Woods II under Pentland's close supervision.

The present lawsuit was filed by Banco del Atlantico, S.A. in the United States District Court for the Southern District of Texas in 1996. Less than two years later, Atlantico ceased operation and Banco International, S.A. (Bital), its receiver, took over the prosecution of this lawsuit. HSBC Mexico, S.A. was joined as a plaintiff in 2004.

While the case was pending in Texas, the defendants moved to dismiss on grounds of forum non conveniens, international comity, and failure to state a claim. In response to the motion based on forum non conveniens, the plaintiffs argued that the alternative forum, the Mexican court which was now handling Corelmex's bankruptcy (for by this time the company was in bankruptcy), was corrupt. Plaintiffs also contended that defendants had bribed the Mexican judge. A magistrate judge, apparently unimpressed with these claims, recommended dismissal of the case.

It was two years after the recommendation was entered that a district judge stated his concern over the allegations of corruption. He ordered limited discovery on that issue, authorizing Atlantico to depose six individuals with relevant knowledge. He also ordered that a brief summarizing the evidence of corruption be filed by March 23, 2001. The deadline came and went and nothing was filed.

Further proceedings were held in Texas but nothing was resolved, and the case was transferred to the United States District Court for the Southern District of Indiana in March 2003.

After the case had been pending for almost 10 years, the first Rule 30(b)(6) depositions were attempted. In response to

the notice for the deposition, plaintiffs designated Maricela Huerta Cova, the person who signed interrogatory answers, as the deponent. The deposition began in January 2006, but produced virtually no information because plaintiffs' counsel interposed an inordinate number of privilege and work product objections, instructing Huerta Cova not to answer even basic questions. For instance, counsel instructed Huerta Cova not to answer this question: "Are you a witness as a representative of HSBC Mexico today?"

Understandably unsatisfied with the deposition, defendants moved to compel further testimony. In an April 28, 2006, order, Magistrate Judge V. Sue Shields called the deposition a "fiasco." She said:

> [T]he vast majority of plaintiffs' objections were utterly without merit and evince either a complete lack of understanding of the Federal Rules of Civil Procedure or, and far more likely, an intentional effort to obfuscate and to impede the defendants' legitimate efforts at obtaining discovery in this case.

The magistrate judge pointed out that she had held more than once that defendants are entitled to know what evidence the plaintiffs have and how they intend to prove their case. She did not recommend sanctions but rather gave the plaintiffs two options as to how to proceed:

> One option would be to reopen the deposition, deem the plaintiffs to have waived any legitimate privilege objections they may have had by interposing so many frivolous privilege objections, and order the plaintiffs to prepare their witness(es) thoroughly and completely to respond to all of the defendants' unanswered questions and to give further testimony regarding the subjects set forth in the defendants' deposition notice, with the promise to recommend that the court dismiss the plaintiffs' case if they fail to comply. The other option

would be to forgo the Rule 30(b)(6) process because the plaintiffs believe that there is no relevant information that is "known or reasonably available to them." Of course, the plaintiffs would then be precluded from offering any testimony at trial, other than that which might be necessary to authenticate documents. In other words, the plaintiffs will have to prove their case at trial (and defend any summary judgment motion) through the testimony of witnesses who are not employees or agents of or otherwise under the control of either of the plaintiffs.

Plaintiffs moved for reconsideration. In denying the motion, Judge Shields said "there is simply no justification for allowing the plaintiffs to wait until sixty days prior to trial to identify its own witnesses" in a case that has been pending for almost 10 years. Plaintiffs did not file objection to the order under Rule 72.

Rather, they reopened the deposition and offered a substitute corporate representative, Geoffrey Fichte, for Huerta Cova. Nevertheless, the judge also ordered that Huerta Cova again be deposed.

But these depositions were, in the words of District Judge Larry J. McKinney, another "fiasco." This time rather than privilege objections, the plaintiffs substituted a series of answers the defendants label "talking points." Defendants infer that the answers were prepared in advance; the same answers were given to many, many questions. For instance, defendants asked:

> [I]s there any statement in [defendant's exhibit 1], again, by Pentland USA, that HSBC contends supports its allegations of fraud in this case?

The answer:

> Like I said, this document is part of an overall scheme in which Pentland USA participated in. And I'm not qualified to go through in example and exactly explain every single aspect of this very complicated scheme.

Secondly, both deponents refused to answer questions and rather referred to the pleadings or interrogatory answers. For example:

> Well, I'm not qualified to, you know, analyze and answer this based on the facts of the case, but it is—HSBC has provided facts on this case, and counsel has included those and explained them in the—in the answers to interrogatories in the second amended complaint.

Also, the deponents refused to answer on the ground that HSBC has no firsthand knowledge or personal knowledge of the fact supporting the allegations:

> HSBC contends that, even though it has no firsthand knowledge, it contends that and has clearly stated in our complaint, that this was—this document served as part of the overall scheme to defraud Atlantico.

Defendants also point out that sometimes the prepared answers got mixed together and resulted in internally contradictory answers. For example, when asked what was untrue in a certain document, Fichte said, "I think I've already answered this," and also said, "I'm not able at this point in time to answer that question." It is hard to see how both responses are true.

The defendants gave up and moved for sanctions. In April 2007, Judge McKinney granted the motion. He referred to the numerous objections lodged at Huerta Cova's first deposition. He then said:

The second, and more glaring problem, is the substance of the deposition testimony provided by Fichte and Huerta Cova. Like the first attempted Rule 30(b)(6) deposition, the second attempt was a "fiasco." Fichte and Huerta Cova were unable to answer some of the most basic questions underlying allegations that Plaintiffs have made against Defendants. On numerous occasions, they would respond that HSBC had no "firsthand" knowledge or that the witness had no "personal" knowledge, or they would refer to the Second Amended Complaint, interrogatory answers, or a general "scheme to defraud." In particular, the witnesses were unable, or unwilling, to indicate what was "fraudulent" about documents or statements that Plaintiffs had cited in their interrogatory answers.

The Court agrees with Judge Shields, who stated, apparently more than once, that "at this point in the litigation the defendants are entitled to know what evidence the plaintiffs have regarding their claims and how the plaintiffs intend to prove their case at trial." Apr. 28, 2006, Entry (Docket No. 372). A review of the transcript of Fichte's and Huerta Cova's testimony leaves the Court with the impression that, in spite of a clear warning from Judge Shields, the witnesses were either unprepared for the depositions or were attempting to hinder and obfuscate Defendants' efforts at obtaining discovery in the case. The rationale for the latter possibility is that Plaintiffs simply do not have any information to support their claims, in which case there is little point in subjecting Defendants to further expense and unproductive efforts in attempting to resolve this matter.

And with that, Judge McKinney apparently concluded that enough was enough, so he granted the defendants' motion to dismiss.

The question before us on the plaintiffs' appeal is whether Judge McKinney abused his discretion in putting an end to this case. *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997). We have cautioned that a sanction of dismissal is a last resort which can only be employed in rare cases. *See Schilling v. Walworth County Park & Planning Comm.*, 805 F.2d 272 (7th Cir. 1986). It is a "draconian" remedy, *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992), which should be applied only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing. *Webber v. Eye Corp.*, 721 F.2d 1067 (7th Cir. 1983). That doesn't mean, however, that it can never be used. Even Draco got it right every once in awhile, and today, when district courts have several hundred cases on their dockets, there are times when the "draconian" remedy is appropos. And that time was reached in this case.

On appeal, the plaintiffs argue, among other things, that "there was no finding or record of delay, contumacious conduct, willfulness, bad faith or fault . . . ." The argument is—if nothing else—audacious. There is, in fact, little else in the record.

Plaintiffs contend that the order setting out their options placed them in an "untenable position." We disagree. But even if it did, they have forfeited their rights to appeal the order. They did not seek relief under Rule 72(b) from the district judge. We have determined that a failure to file objections with the district judge waives the right to appeal the issues. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir. 1986).

It is clear from the examples we have quoted, as well as many others in the record, that the deponents offered evasive responses. Plaintiffs also cannot defend themselves by arguing that the defendants' questions asked for legal

conclusions, rather than facts. Our review of the record reveals that many of the questions merely asked the witnesses to point to false statements in the documents. If a question was answered, more often than not the answer was too vague to provide helpful information. Saying, for instance, that something "is just one more element of the fraud scheme plant" is not enlightening. Furthermore, questions relating to legal contentions are not barred.

The plaintiffs also contend that, even if the deposition answers were inadequate, the information was provided by other means, notably interrogatory answers. We do not agree that plaintiffs provided the information, but even if they did, they still could be required to provide responsive answers to proper deposition questions.

For these reasons, we see no basis on which to find that the district judge abused his discretion in dismissing the case as a sanction for the violation of clear and reasonable orders. Accordingly, the judgment of the district court is AFFIRMED.